```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                          :
  JORGE MARTINS,                                          :
                                                          :   MEMORANDUM DECISION
                               Plaintiff,                 :   AND ORDER
                                                          :
              - against -                                 :   22-cv-3520 (BMC)
                                                          :
  THE SHERWIN-WILLIAMS COMPANY,                           :
  d/b/a KRYLON PRODUCTS GROUP, and                        :
  ANIXTER INC.,                                           :
                                                          :
                               Defendants.                :
                                                          :
----------------------------------------------------------X
```

**COGAN**, District Judge.

This is a diversity products liability action. Plaintiff was using defendants' aerosol spray-paint can, which exploded, injuring him. The case is before me on defendants' motion to exclude the expert report and testimony of Mr. Dale Cagwin. Because Mr. Cagwin's opinion meets none of the requirements for admission under Fed. R. Evid. 702 as construed by <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993), the motion is granted.

## BACKGROUND

Plaintiff was a welder and mechanic working at a powerplant. While painting a piece of fabricated steel with a can of aerosol spray-paint primer, the can exploded into his face. As a result, he sustained serious injuries, including the loss of his right eye. Plaintiff brought suit against Sherwin-Williams, the manufacturer of the paint can, and Anixter, Inc., the distributor of the paint can, alleging strict products liability, negligence, and breach of implied warranty. Plaintiff alleges that the can was defectively designed and/or manufactured and did not contain

adequate warnings. Sherwin-Williams alleges that plaintiff abused the can by striking it against a table.

Plaintiff retained Dale Cagwin as an expert engineer to opine on both the design defect and failure to warn issues. First, Mr. Cagwin opines that the dangerous, unreasonable can design led to its failure solely due to shaking, and thus caused plaintiff's injury (the "failure-by-shaking" theory). More specifically, Mr. Cagwin asserts that the can's necked-in design (meaning that the can's circumference gradually narrows prior to its connection to the top and bottom portions of the can) and use of double-reduced steel (as opposed to single-reduced steel) resulted in the can's unreasonably dangerous design. As a result, Mr. Cagwin opines, the can's design made it more susceptible to exploding when shaken, which, he believes, is what happened here and caused plaintiff's injuries. As support for this opinion, Mr. Cagwin relies on a 2011 report by Michael Fox (the "Fox report") which concluded that single-reduced steel cans were more resistant to rupturing when dropped than double-reduced steel cans.

In addition, Mr. Cagwin opines that the paint can's labeling warning was insufficient to prevent plaintiff's injury. This insufficient warning label, Mr. Cagwin opines, also made the can defective and unreasonably dangerous, and was also a cause of plaintiff's injuries.

## LEGAL STANDARD

Federal Rule of Evidence 702 and Daubert, 509 U.S. at 591-95, articulate the standard for expert testimony's admissibility: (a) the expert's scientific, technical, or otherwise specialized knowledge must help the trier of fact understand the evidence or determine a fact at issue, (b) the testimony is based on sufficient facts and/or data, (c) the testimony is the product of reliable principles and/or methods, and (d) the expert has reliably applied the principles and/or methods to the facts of the case. The proponent of the expert has a burden to establish these requirements

by a preponderance of the evidence.  See Diaz v. Lobel's of New York, LLC, No. 16-cv-6349, 2019 WL 3429774, at *7 (E.D.N.Y. July 30, 2019).

In the Second Circuit, Daubert admissibility is a two-step inquiry.  The first step is to determine whether the expert witness has the requisite qualifications to opine on the subject in question.  See Lara v. Delta Internat'l Machinery Corp., 174 F. Supp. 719, 729 (E.D.N.Y. 2016).  The court cannot consider testimony outside the scope of an expert's discipline.  See RVC Floor Decor, Ltd. v. Floor and Decor Outlets of Am., No. 18-cv-6449, 2023 WL 2838423, at *6 (E.D.N.Y. April 7, 2023).  Although a formal degree or training is not a necessary requirement to offer expert testimony, the absence of such qualifications is typically required to be offset by relevant practical experience.  See Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp., No. 04-cv-7369, 2006 WL 2128785, at *5 (S.D.N.Y. July 28, 2006).

The second step is to determine whether the expert's testimony has a sufficiently reliable foundation to warrant its consideration.  See Campbell ex rel. Campbell v. Metropolitan Prop. and Cas. Ins. Co., 239 F.3d 179, 184-85 (2d Cir. 2001).  At the second step, the Court may consider whether the expert's theory or technique can be and has been tested, is subject to peer review, has a high known or potential rate of error, and is generally accepted in the relevant scientific community.  See Daubert, 509 U.S. at 592-93.

Finally, experts in design defect cases have a special requirement: to offer a feasible design alternative and to establish (usually through testing) that the alternative would have resulted in greater safety to the end user in the accident at issue.  See Zaremba v. Gen. Motors Corp., 360 F.3d 355, 358 (2d Cir. 2004).

**DISCUSSION**

I.  Mr. Cagwin is not qualified to opine on the design of aerosol cans or the sufficiency of the warning labels on such cans.

Defendants argue that Mr. Cagwin's educational and professional experiences do not qualify him to opine on the issues discussed in his report. They assert that Mr. Cagwin's degree is in civil engineering, not mechanical engineering, and the design of aerosol cans fits within the latter. As for his professional background, defendants argue that Mr. Cagwin's experience with HVAC, plumbing, and fire protection is inapplicable and irrelevant to the design of aerosol cans as consumer products. Additionally, defendants point out that Mr. Cagwin lacks both educational and professional experience in warning labels on consumer products.

Plaintiff counters that defendants are holding Mr. Cagwin to an "overly narrow test of his own qualifications," and the Court should assess whether his "general engineering experience" qualifies him to testify in an area in which he does not have extensive experience. Plaintiff also argues that the fact that Mr. Cagwin has not designed a spray-paint can goes to the weight, not the admissibility, of his testimony, and defendants are free to cross-examine him at trial on the extent of his qualifications.

Plaintiff fails to acknowledge and counter the crux of defendants' argument, which is that Mr. Cagwin's educational and professional backgrounds are unrelated to the subject matter about which he wishes to testify. Instead, plaintiff (incorrectly) argues that the deficiencies in Mr. Cagwin's experience go to the weight of his testimony, rather than its admissibility. But whether a witness possesses the baseline qualifications to testify about the subject matter at issue goes to his testimony's admissibility, not its weight. See Hilaire v. DeWalt Indus. Tool Co., 54 F. Supp. 3d 223, 235 (E.D.N.Y. 2014).

First, Mr. Cagwin does not have the requisite qualifications to testify about the design of spray-paint cans. Looking at the totality of Mr. Cagwin's experience and knowledge rather than focusing solely on education or employment history, as I'm required to do, see Humphrey v. Diamant Boart Inc., 556 F. Supp. 2d 167, 174-75 (E.D.N.Y. 2008), I find that he is not qualified. Mr. Cagwin admitted at his deposition that design of aerosol cans falls into mechanical engineering, not civil engineering (in which he has a degree). And while the lack of specific education is not necessarily dispositive, it must usually be offset by professional or practical experience. See CIBA Vision Corp., 2006 WL 2128785, at *5. Such experience is also lacking here: I don't see how Mr. Cagwin's purported expertise in the vague and broad category of "pressure vessels" qualifies him to opine on the design of spray-paint cans. Plaintiff's brief fails to describe how purported "pressure vessels" like vacuum cleaners, tires, and blimps are analogous to spray-paint cans. And when asked at his deposition, Mr. Cagwin admitted that the pressure vessels he listed were structurally distinct from the aerosol can at issue in this case.[1]

Second, Mr. Cagwin lacks the requisite qualifications to testify regarding the sufficiency of the label on the spray-paint can at issue. Putting aside his admission at his deposition that he is not an expert on evaluating the sufficiency of consumer product warning labels, Mr. Cagwin has not received any formal education or training on warning labels. Further, it appears his only professional experience with warning labels is in connection with his employment at a gas heat

---

[1] Mr. Cagwin's testimony was recently excluded on analogous grounds. In James v. Baltimore Gas and Elec. Co., No. 1058, 2023 WL 4360717, at *4 (Md. Ct. App. July 5, 2023), the Maryland Court of Appeals held that the trial court properly excluded Mr. Cagwin as unqualified. The action arose from a natural gas explosion in a residence. Because Mr. Cagwin testified that he lacked fundamental knowledge about defendant's equipment and data, the trial court held that he was unqualified to testify to the requisite standard of care. On appeal, the court held that he "lack[ed] the foundation necessary in his experience and his knowledge to testify to the issues that are essential to this case." Id. The Maryland courts look to Daubert in determining the admissibility of expert testimony. See Md. R. Evid. 5-702; Abruquah v. State, 483 Md. 637, 654, 296 A.2d 961, 971-72 (2023) ("[W]e have observed that the guidance provided by the United States Supreme Court in Daubert and its progeny is critical to a trial court's reliability analysis.") (cleaned up).

equipment company, where he explained the hazards associated with the company's products to the employees who did, in fact, design the products' warning labels. That experience is far too attenuated from warning labels to constitute the "specialized knowledge" that Rule 702 and Daubert demand. And, notably, the only substantive rebuttal plaintiff can muster on this score is the fact that plaintiff "acknowledged that he was aware of the dangers indicated in the label."

Because Mr. Cagwin lacks the "scientific, technical, or otherwise specialized knowledge" necessary to testify as an expert witness – with respect to both design and labeling of spray-paint cans – he does not possess the requisite qualifications to serve as an expert witness under Rule 702(a) and Daubert.

II. Mr. Cagwin's opinions on spray-paint can design are not sufficiently reliable.

Defendants argue that Mr. Cagwin's "failure-by-shaking" theory is unsupported because he only relies on the Fox report, which is inapposite because it did not concern shaking paint cans (let alone paint cans exploding from shaking). They also point out Mr. Cagwin's failure to test his own theory and to explain why his proposed alternative design – a straight-walled can made from single-reduced steel – would have been safer. Plaintiff counters that Mr. Cagwin relied on other scientific literature – specifically, the Grunes report (which he only mentioned at his deposition, not in his report), which examined five spray-paint cans that reportedly exploded when shaken. Plaintiff also points to examples of courts declining to exclude experts who did not test their proposed alternative designs.

First, an expert's opinion must be supported by sufficient facts and data, such as peer-reviewed reports. See Daubert, 509 U.S. at 592-93. Both parties agree that Mr. Cagwin relied primarily on the Fox report. I find that the Fox report is both irrelevant and insufficient to support Mr. Cagwin's failure-by-shaking theory. As previewed above, the Fox report tested the

6

effect of dropping and mechanical abuse on double- and single-reduced steel cans – not the effects of routinely shaking steel cans. It was unreasonable for Mr. Cagwin to extrapolate the results of a test that placed extreme, artificial pressure on steel cans to his theory about routinely shaking cans. In fact, Mr. Cagwin admitted at his deposition that the Fox report did not replicate the failure-by-shaking that plaintiff allegedly experienced. Plaintiff's only substantive counter regarding the Fox report is that it was peer-reviewed, but peer review of an inapposite study does not make it, nor Mr. Cagwin's reliance on it, sufficient to support his opinion on an entirely different theory.

Plaintiff also points out that Mr. Cagwin relied on the Grunes report. As an initial matter (and as plaintiff admits), Mr. Cagwin failed to identify the Grunes report in his own expert report and raised it for the first time at his deposition. Even putting aside the report's untimely disclosure, I do not find it to be persuasive or reliable.

The report is the product of Rust-Oleum Corporation's pre-litigation correspondence with its supplier and was not peer-reviewed. It examined five necked-in Rust-Oleum cans that, according to consumers, apparently exploded from routine shaking. Mr. Cagwin relies on the Grunes report to support his conclusion that the can's necked-in design made it more susceptible to rupturing from routine shaking. However, the report does not document any scientific testing, but rather collects anecdotes in which Rust-Oleum customers self-reported aerosol can failure from routine shaking. Coupled with the report's adversarial posture and lack of peer review, it was again unreasonable for Mr. Cagwin to extrapolate from five anecdotes about necked-in cans exploding from shaking and conclude that necked-in cans are more susceptible to exploding from shaking.

7

Second, in a situation where, as here, an expert's theory is not widely supported, the expert should conduct independent testing (such as recreating the accident) to support his theory. See Toomey v. Millercoors LLC, 86 F. Supp. 202, 207 (E.D.N.Y. 2015). The Fox and Grunes reports are the only third-party scientific literature that Mr. Cagwin purportedly relied upon to support his failure-by-shaking theory. On that basis, I conclude that Mr. Cagwin's failure-by-shaking theory is not widely supported, so he should have conducted his own testing to confirm or refute his theory.

Third, in a design-defect case such as this one, an expert incurs a special responsibility to present an alternative design and to establish – usually through testing – that the alternative would have been safer to the user in the accident at issue. See Hilaire, 54 F. Supp. 3d at 244 ("[T]he touchstone of an expert's report should be a comparison of the utility and cost of the product's design and alternative designs [and] should usually be supported by testing of the alternative design.") (cleaned up); see also Urena v. Conagra Foods, Inc., No. 16-cv-5556, 2020 WL 3051558, at *10 (E.D.N.Y. June 8, 2020) (excluding expert's testimony in aerosol can design defect case in part because expert failed to test alternative can design).

Mr. Cagwin only went halfway. He opines that if the can was straight-walled and made of single-reduced steel, it would have likely prevented plaintiff's injury. However, he failed to establish through any evidence, let alone his own testing, that his proposed alternative design would have been safer for plaintiff's use (despite admitting that he had the ability to do so). His alternative design theory, then, is entirely unsupported.[2]

---

[2] Plaintiff attempts to collect cases standing for the proposition that Mr. Cagwin did not need to test his alternative design, but these cases are inapposite, either because they are completely outside the realm of products liability or held that an expert's testing an alternative design was, in fact, necessary. See Richardson v. Correctional Med. Care Inc., No. 22-210, 2023 WL 3490904, at *3 (2d Cir. May 17, 2023) (reversing district court's decision in medical malpractice action excluding medical expert because the district court ignored the expert's consideration of family medical history, symptoms, and diagnosis in evaluating decedent's cause of death); Chica-Hernandez v. Italpresse U.S.A., Inc., No. 17-cv-6422, 2022 WL 768361, at *6 (E.D.N.Y. March 13, 2022) (in product liability action where

8

III.   Mr. Cagwin's opinions on spray-paint can warning labels are not sufficiently reliable.

Defendants argue that Mr. Cagwin does not apply his stated warning label methodology to the facts of the case: he opined that warning labels should highlight non-obvious risks, but testified that the risk plaintiff faced (a risk of the can bursting from striking it against a table) was, in fact, obvious.  They also consider Mr. Cagwin's opinion that additional warnings against striking the can would have made a difference to be nonsensical, because plaintiff claims he did not strike the can, and Mr. Cagwin's causation theory does not involve plaintiff striking the can.  Finally, defendants point out that plaintiff cannot even recall reading the warning label, so it is speculative for Mr. Cagwin to assert that any different label would have made a difference in preventing the accident.  Notably, plaintiff's brief does not attempt to counter defendants' arguments on Mr. Cagwin's warning label-related opinions, effectively conceding defendant's point.

An expert witness must reliably apply his methodology to the available facts and data.  See Fed. R. Evid. 704(d).  Mr. Cagwin has failed to do so.  Here, his stated methodology was including non-obvious risks on the paint can's label.  But applying that methodology to the facts here, Mr. Cagwin fails to explain how this additional warning language would have prevented plaintiff's injury.  His opinion therefore does not suggestion any theory of causation.  See Boateng v. Bayerische Motoren Werke Aktiengesellschaft, No. 17-cv-209, 2022 WL 4537555, at *16 (E.D.N.Y. Sept. 20, 2022) (failure to warn cannot be proximate cause of accident where a warning would not have increased the user's awareness of the danger).  In fact, Mr. Cagwin abandoned his own position when he testified that the addition of a warning label in this case

---

expert presented and tested an alternative design, court held that expert's testing his alternative design was necessary); Linde v. Arab Bank, PLC, 922 F. Supp. 2d 316, 322-23 (E.D.N.Y. 2013) (expert used untested methodology to determine whether certain charities were under control of Hamas terrorist organization).

9

was "immaterial." Of course, this statement is confirmed by the fact that plaintiff cannot recall reading the can's label.

## CONCLUSION

For the reasons set forth above, defendants' motion to exclude Mr. Cagwin's report and testimony is granted.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
       December 19, 2023